**IN THE UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF TENNESSEE**
**NASHVILLE DIVISION**

**MATTHEW DUNTZ,**

**Plaintiff,**

**Case No.: ______________**

**vs.**

**THE LINCOLN NATIONAL LIFE INSURANCE COMPANY,**

**Defendant.**

---

## COMPLAINT

---

COMES NOW the Plaintiff, Matthew Duntz (hereinafter "**Plaintiff**" or "**Mr. Duntz**"), by and through his attorneys, and for his Complaint against Defendant The Lincoln National Life Insurance Company (hereinafter "**Defendant**" or "**Lincoln**"), states as follows:

### JURISDICTION AND VENUE

1. Jurisdiction of this case is based on the Employee Retirement Income Security Act of 1974, as amended ("ERISA"); and in particular, without limitation, 29 U.S.C. §§ 1132(e)(1) and 1132(f). Among other things, those provisions give District Courts the right to hear civil actions brought to recover benefits and clarify rights under the terms of employee welfare benefit plans; here, this consists of Aerospace Technologies Group, Inc.'s Long Term Disability Plan and corresponding insurance policy (**Policy No.: 000010141290**) (hereinafter the "**Plan**" and the "**Policy,**" respectively); which was (and is) underwritten, administered, and/or managed by Lincoln for the benefit of certain employees of Aerospace Technologies Group, Inc. (hereinafter "**Aerospace Technologies**"). In addition, this action may be brought in this Court pursuant to 28 U.S.C. § 1331, which gives District Courts jurisdiction over actions that arise under the laws of

the United States ("federal question jurisdiction").

2. The ERISA statute provides, at 29 U.S.C. § 1133, a mechanism for administrative or internal appeal of benefit denials. These avenues of appeal, *i.e.*, administrative remedies, have now been exhausted by or on behalf of Plaintiff. *See*, **Lincoln Claim No. 1220010964**.

3. Venue is proper in the Middle District of Tennessee, pursuant to 29 U.S.C. § 1132(e)(2) and/or 28 U.S.C. § 1391.

## RELEVANT PARTIES

4. Mr. Duntz lives in Hendersonville, Tennessee, and a substantial part of the events, transactions, and occurrences material to his claim for disability took place within the Middle District of Tennessee.

5. At all times relevant hereto, Mr. Duntz was an "employee" of Aerospace Technologies, that being his "employer"; as those two terms are defined in 29 U.S.C. §§ 1002(5) and (6). However, due to his established disability, he last worked at Aerospace Technologies on or about July 30, 2021.

6. At all times relevant hereto, Aerospace Technologies was the Plan Sponsor and Plan Administrator for the Plan; it was also "plan sponsor," "administrator," and/or a "fiduciary" for the Plan, as those terms are defined by 29 U.S.C. §§ 1002(16) and (21).

7. At all times relevant hereto, Defendant was the underwriter, provider of benefits, plan administrator, claims administrator, claims-review fiduciary, and/or claims fiduciary for the Plan; alternatively, or in addition, Defendant was an "administrator" and/or a "fiduciary" for the Plan, as those terms are defined by 29 U.S.C. §§ 1002(16) and (21). Here, it is apparent on the face of the record that Defendant was/is both ultimate decision-maker (claims administrator, claims-review fiduciary, claims fiduciary) and payer/funding source of any benefits, and thus it is alleged

that Defendant has a financial conflict of interest/bias that may impact the standard of review used by the Court.

8. At all times relevant hereto, Defendant Lincoln acted as agent for the Plan and for Plan Sponsor/Plan Administrator/Policyholder Aerospace Technologies.

9. Under the Plan, Aerospace Technologies delegated or assigned to Defendant Lincoln the claims-fiduciary and claims-administrator duties for the Plan and under the Policy; *i.e.*, decision-making on claims for benefits, decision-making on appeals of denied claims; plus (upon information and belief) other administrative powers and duties for or under the Plan and the Policy.

10. At all times relevant hereto, the Plan constituted an "employee welfare benefit plan" as defined by 29 U.S.C. § 1002(1); as an incident to his employment, Plaintiff was eligible and covered under the Plan and thus qualifies as a "participant" as defined by 29 U.S.C. § 1002(7).

11. At all times relevant hereto, the Plan/Policy provided generally for payment of disability benefits if Plaintiff became disabled and unable to work because of injury, illness, sickness, and/or other covered medical condition as set forth under the Plan/Policy.

12. The Plan/Policy provides that "Total Disability" or "Totally Disabled" is defined as follows:

> 1. During the Elimination Period and Own Occupation Period, it means that due to an Injury or Sickness the Insured Employee is unable to perform:
>
> > a. during the first 12 months following the date of loss, one or more of the Main Duties of his or her Own Occupation; or
> >
> > b. after a period of 12 months following the date of loss, each of the Main Duties of his or her Own Occupation.
>
> 2. After the Own Occupation Period, it means that due to an Injury or Sickness the Insured Employee is unable to perform each of the Main Duties of any occupation which his or her training, education or experience will reasonably allow.

## STATEMENT OF FACTS

13. Plaintiff realleges and reavers paragraphs 1 through 12 of the Complaint, incorporating them by reference herein as if specifically restated.

14. Mr. Duntz is currently 61 years old, and his date of birth is in July of 1962.

15. Mr. Duntz worked for Aerospace Technologies as its Chief of Sales (Chief Sales Officer). This executive sales position involved heavy travel, setting up and tearing down at trade shows, and other substantial non-sedentary functions. When he last worked, his annual compensation was approximately $217,000.00 (*exclusive of any bonuses).

16. Owing to his established medical disability, as stated, Mr. Duntz's last day of work was on or about July 30, 2021.

17. The medical conditions that form the basis for Plaintiff's present disability include, without limitation, the following: atherosclerotic heart disease (coronary arteriosclerosis) (described to Plaintiff as "aggressive heart disease"); two heart attacks (myocardial infarctions) within 18 months (March, 2020 and July, 2021), the latter resulting in his stopping work; abnormal cardiac catheterization; placement of stent(s); hyperlipidemia; chest pain; chronic angina; shortness of breath; benign paroxysmal positional vertigo; night sweats/diaphoresis; cancer (melanoma) in numerous locations including liver; degenerative changes of the spine, with diagnosis of lumbago with sciatica (left side); sacral and sacrococcygeal instabilities (hip, pelvic and buttock pain); pain in thoracic spine; cervicalgia (neck pain); lymphadenectomy (left arm pit) (part of surgical management of cancer); Mohs surgery to remove tumor on face; abnormal weight loss; myalgia; gout; vitamin D deficiency; hypothyroidism; and hearing loss. According to treating cardiologist Dr. Constance Fields, Mr. Duntz "[n]eeds to avoid all emotional and physical stress" in terms of employment.

18. After he could no longer perform his work for Aerospace Technologies, and based on his employment there, Mr. Duntz was eligible and applied for short-term disability ("STD") benefits through Lincoln. STD benefits were awarded approximately from August 2, 2021 through January 29, 2022.

19. After that, his medical condition not having improved, Mr. Duntz was eligible and applied for LTD benefits, again through Lincoln. However, Lincoln denied Mr. Duntz's claim for LTD benefits altogether.

20. Mr. Duntz was first notified that Lincoln would not be paying any such benefits via letter dated May 2, 2022.

21. Despite due appeals by or on behalf of Plaintiff, Lincoln has continued to deny LTD benefits. The final denial letter was dated June 26, 2023.

22. Any and all applicable insurance-policy premiums required for LTD coverage under the Plan/Policy have been fully paid or otherwise satisfied.

23. Plaintiff has filed or caused to be filed any/all notice(s) and/or proof(s) of claim or loss that were condition(s) precedent to recovering benefits under the Plan/Policy for the losses claimed herein.

24. At all times relevant hereto, *i.e.*, at all times for which monetary or other relief is sought, Plaintiff was "Totally Disabled" or suffering from "Total Disability" as those terms are defined under the Plan/Policy; such that certain policy benefits are now due and overdue to be paid. That is, his claim was and has continued to be amply supported by his treating medical providers, who have confirmed his continuing inability to work.

25. Under any ERISA standard of review that may apply, the position taken by Lincoln in denying this claim, viewed against the entire Administrative Record as properly constituted,

cannot withstand judicial scrutiny. The review, analysis, and decision by Lincoln were wrong, as well as arbitrary and capricious, under the circumstances presented. [1]

26. Further, Lincoln's denial of benefits here must be reversed to the extent that Plaintiff was not afforded a reasonable opportunity for a full and fair review. *See*, 29 U.S.C. § 1133(2); 29 C.F.R. § 2560.503-1.

27. Plaintiff is entitled to past due LTD benefits, as well as any other companion benefits that were provided under the Plan/Policy during the pertinent time frame. Further, he is entitled to all future LTD benefits and companion benefits provided by the Plan/Policy, provided that he otherwise continues to meet all applicable terms and conditions of same. This specifically includes, without limitation, benefits once the Plan/Policy definition of Disabled/Disability changes to an "Any Occupation" definition (*which will occur, without more, in or about late January, 2024).

28. Based on the facts summarized above and further proof that can be gleaned from the record (Administrative Record), if not adduced through any discovery, Plaintiff has suffered a loss of monies, if not other/additional damages; thus, he alleges the causes of action set forth below.

## **CAUSES OF ACTION**

### **COUNT I – ERISA/Statutory Claims**

29. Plaintiff realleges and reavers paragraphs 1 through 28 of the Complaint, incorporating them by reference herein as if specifically restated.

30. Based on the facts summarized above, Plaintiff makes claim under ERISA for the reinstatement/award of all LTD and related benefits due; past, present and future; pursuant to the

[1] Beyond this, Plaintiff respectfully reserves all points and arguments regarding the standard of review herein, pursuant to *Firestone v. Bruch*, 489 U.S. 101 (1989), and its progeny.

Plan/Policy at issue. That is, this is an action by a plan participant seeking recovery of benefits, and clarification/declaration of benefits, brought pursuant to 29 U.S.C. §§ 1001, *et seq*., in particular 29 U.S.C. § 1132(a); as well as all pertinent implementing regulations and the federal common law developed in the context of ERISA.

## PRAYER FOR RELIEF

**WHEREFORE**, the Plaintiff prays for the following relief:

A. That the Court enter judgment in Plaintiff's favor and against the Defendant; declaring, determining, clarifying and ordering under ERISA (via 28 U.S.C. §§ 2201, 2202 and Fed. R. Civ. P. 57, via injunction pursuant to Fed. R. Civ. P. 65, via specific performance, or otherwise) that Defendant or its designee pay to Plaintiff any and all LTD benefits to which he was entitled but is still owed; or, alternatively, a dollar amount equal to the contractual amount of benefits to which Plaintiff was entitled but never paid; or, alternatively, assess concomitant surcharge(s) under principles of equity;[2] each together with interest; and all as recoverable pursuant to the contractual terms of the Plan/Policy at issue, under ERISA law, and subject to the proof;

B. That the Court enter judgment in Plaintiff's favor and against the Defendant; declaring, determining, clarifying and ordering under ERISA (via 28 U.S.C. §§ 2201, 2202 and Fed. R. Civ. P. 57, via injunction pursuant to Fed. R. Civ. P. 65, via specific performance, or otherwise) that Defendant or its designee pay to Plaintiff all LTD benefits to which he is or will be entitled in the future pursuant to the contractual terms of the Plan/Policy at issue; subject to the proof and policy application procedures, as required; and so long as he otherwise continues to meet all applicable terms and conditions of the Plan/Policy; this specifically includes, without limitation,

[2] *See, CIGNA Corp. v. Amara*, 563 U.S. 421, 440-445 (2011).

benefits once the Plan/Policy definition of Disabled/Disability changes to an "Any Occupation" definition;

C. That the Court award to Plaintiff his attorney's fees and costs of action pursuant to ERISA. *See*, 29 U.S.C. § 1132(g);

D. That the Plaintiff recover any and all other, different or additional damages, expenses, costs and relief (legal, equitable, declaratory or remedial) to which he may be entitled by virtue of the facts and cause(s) of action alleged above, consistent with the ERISA statute and regulations, the federal common law developed in the context of ERISA, and the interests of equity and justice; including without limitation any applicable or accrued cost-of-living adjustments ("COLAs"); any provision for waiver of, continuation of payment of, or reimbursement of, premiums on health and dental insurance; any provision for waiver of, continuation of payment of, or reimbursement of, premiums on life insurance (life waiver of premium); and any provision for continued payments/contributions to employer-sponsored pension or retirement plan(s) (if and as any/all of those items may be provided under the Plan/Policy in force); plus pre-judgment interest[3] and post-judgment interest[4] on all amounts awarded or to be awarded;

E. That the Court order under ERISA (via 28 U.S.C. §§ 2201, 2202 and Fed. R. Civ. P. 57, via injunction pursuant to Fed. R. Civ. P. 65, via specific performance, or otherwise) that the Defendant or its designee render and provide a full and accurate accounting of all dollar figures and computations for Plaintiff's LTD benefits to be paid; in sufficient detail so that Plaintiff may ascertain that his benefits are paid in the proper amounts; and to include any putative offset amounts that might reduce the amount of benefits otherwise paid;

[3] *See*, *Curtis v. Hartford Life & Accident Ins. Co*., 64 F. Supp. 3d 1198, 1224 (N.D. Ill. 2014) (presumption in favor of prejudgment interest is specifically applicable in ERISA cases).

[4] *See*, 28 U.S.C. § 1961.

F. That Plaintiff be awarded such additional or other relief as may be appropriate and just; and

G. Plaintiff reserves the right, if appropriate, pursuant to Fed. R. Civ. P. 15 or otherwise to amend/supplement this lawsuit and the Prayer for Relief based on additional fact/circumstances not now reasonably apparent, or to be revealed in discovery conducted herein; and/or based on relevant evidence from Plaintiff's companion claim for SSDI benefits (*upon information and belief, pending at this time); and/or to add any party-defendant(s) necessary to afford complete relief to Plaintiff.

Dated this 13th day of July, 2023.

**CODY ALLISON & ASSOCIATES, PLLC**

/s/ *Andrew M. Hickman*
K. Cody Allison, BPR No. 020623
Samuel D. Payne, BPR No. 019211
Andrew M. Hickman, BPR No. 037331
Cavalier Building
95 White Bridge Road, Ste. #250
Nashville, TN 37205
Telephone: (615) 234-6000
Fax: (615) 727-0175
cody@codyallison.com
sam@codyallison.com
drew@codyallison.com