Lincoln Financial Group is the marketing name for Lincoln National Corporation and its affiliates.

**The Lincoln National Life Insurance Company**
Service Office:
8801 Indian Hills Drive
Omaha, NE 68114-4066
Toll free (800) 423-2765
Toll free Fax (877) 843-3950
www.LincolnFinancial.com

June 26, 2023

CODY ALLISON AND ASSOCIATES, PLLC
ATTN K. CODY ALLISON
95 White Bridge Road
Suite #250
NASHVILLE, TN 37205

Re: Policyholder: Aerospace Technologies Group, Inc.
Policy Number: 00001014129000000
Claim Number: 1220010964
Claimant: Matthew Duntz

Dear K. CODY ALLISON:

We have completed our review of your client's Long Term Disability appeal. Based on the information provided, we have determined that we are unable to approve benefits beyond . In our appeal review process, all information previously submitted as well as any new documentation was used to make a determination.

To qualify for benefits under the policy issued to your client's employer, an individual must satisfy all of the provisions of the policy. This includes, but is not limited to, the following:

**TOTAL DISABILITY** or **TOTALLY DISABLED** will be defined as follows

1. During the Elimination Period and Own Occupation Period, it means that due to an Injury or Sickness the Insured Employee is unable to perform:
   a. during the first 12 months following the date of loss, one or more of the Main Duties of his or her Own Occupation; or
   b. after a period of 12 months following the date of loss, each of the Main Duties of his or her Own Occupation.
2. After the Own Occupation Period, it means that due to an Injury or Sickness the Insured Employee is unable to perform each of the Main Duties of any occupation which his or her training, education or experience will reasonably allow.

The loss of a professional license, an occupational license or certification, or a driver's license for any reason does **not**, by itself, constitute Total Disability.

©2023 Lincoln National Corporation www.LincolnFinancial.com
Lincoln Financial Group is the marketing name for Lincoln Natio[...]es.
Affiliates are separately responsible for their own financial and c[...]

EXHIBIT
2

**OWN OCCUPATION or REGULAR OCCUPATION** means the occupation, trade or profession:

1. in which the Insured Employee was employed with the Employer prior to Disability; and
2. which was his or her main source of earned income prior to Disability.

After a period of 12 months following the date of loss, it means a collective description of related jobs, as defined by the U.S. Department of Labor Dictionary of Occupational Titles. It includes any work in the same occupation for pay or profit, regardless of:

1. whether such work is with the Employer, with some other firm, or on a self-employed basis; or
2. whether a suitable opening is currently available with the Employer or in the local labor market.

**MAIN DUTIES** or **MATERIAL AND SUBSTANTIAL DUTIES** means those job tasks that:

1. during the first 12 months following the date of loss, are normally required to perform the Insured Employee's Own Occupation; or
2. after a period of 12 months following the date of loss:
    a) are normally required to perform the Insured Employee's Own Occupation; and
    b) could not reasonably be modified or omitted.

To determine whether a job task could reasonably be modified or omitted, the Company will apply the Americans with Disabilities Act's standards concerning reasonable accommodation. It will apply the Act's standards, whether or not:

1. the Employer is subject to the Act; or
2. the Insured Employee has requested such a job accommodation.

An Employer's failure to modify or omit other job tasks does **not** render the Insured Employee unable to perform the Main Duties of the job.

Main Duties, after a period of 12 months following the date of loss, include those job tasks:

1. as described in the U.S. Department of Labor Dictionary of Occupational Titles; and
2. as performed in the general labor market and national economy.

Main Duties are **not** limited to those specific job tasks as performed for a certain firm or at a certain work site.

Based on information obtained from your client's employer, occupational information contained within the *Dictionary of Occupational Titles* (DOT), and evaluation from vocational professionals, we have determined that your client's occupation as a Chief Sales Officer is best defined as a Vice President & Demonstrator in the national workforce. The material and substantial duties of a Vice President & Demonstrator include but are not limited to the following:

- Directs and coordinates activities of one or more departments, such as engineering, operations, or sales, or major division of business organization, and

aids chief administrative officer in formulating and administering organization policies.

- Demonstrates merchandise and products to customers to promote sales.
- Displays product and explains features to customers. Answers customer's questions about product.
- Demonstrates use or production of product and simultaneously explains merits to persuade customers to buy product.

Regarding physical capacity, a Vice President & Demonstrator in the national workforce is a Light physical capacity occupation.

> The definition of light work is L-Light Work - Exerting up to 20 pounds of force occasionally, and/or up to 10 pounds of force frequently, and/or a negligible amount of force constantly (Constantly: activity or condition exists 2/3 or more of the time) to move objects. Physical demand requirements are in excess of those for Sedentary Work. Even though the weight lifted may be only a negligible amount, a job should be rated Light Work: (1) when it requires walking or standing to a significant degree; or (2) when it requires sitting most of the time but entails pushing and/or pulling of arm or leg controls; and/or (3) when the job requires working at a production rate pace entailing the constant pushing and/or pulling of materials even though the weight of those materials is negligible. NOTE: The constant stress and strain of maintaining a production rate pace, especially in an industrial setting, can be and is physically demanding of a worker even though the amount of force exerted is negligible.

In order to be considered Totally Disabled, the medical documentation must support that your client is unable to perform each of the main duties of your client's own occupation. As such, in considering whether your client qualifies for Long Term benefits as of 01/27/2022, we evaluated whether your client would be restricted or limited from performing the main duties of your client's occupation as listed above.

Your client's entire file was reviewed upon appeal. Disability must be supported from 01/27/2022 forward, which was the focus of our determination.

**<u>Summary of Initial Claim Filing</u>**

Your client's initial claim forms state that your client was unable to continue working in your client's own occupation beyond 07/30/2021 due to heart disease and hyperlipidemia.

Benefits were not approved after we determined your client is not Totally Disabled from performing the main duties of his or her occupation. Our evaluation included review of the medical documentation, including consultation with and/or review of a written report an independent physician who is Board Certified in Cardiovascular Disease, Interventional Cardiology and certified in Nuclear Cardiology. Our evaluation determined the medical records did not support restrictions and limitations that would render your client unable to perform the main duties of their occupation beyond 01/27/2022.

For complete details please refer to our letter dated 05/04/2022.

**<u>Summary of First Level of Appeal</u>**

On 10/13/2022, your client filed an appeal in response to our determination to deny benefits.

Our review of the medical documentation which included consultation with and/or review of a written report from an independent physician who is Board Certified in Cardiovascular Disease, as well as a review of any restrictions or limitations that were identified during our review process, determined the medical records do not support restrictions and limitations that would render your client unable to perform the main duties of his or her own occupation beyond 01/27/2022.

For complete details please refer to our letter dated 12/20/2022.

**Summary of Second Level of Appeal**

On 02/14/2023, your client filed their second and final appeal in response to our determination to uphold our previous decision to deny benefits. No additional information was submitted with your client's appeal.

As part of our review, your clients claim file was reviewed by a health care consultant, and this report was previously provided to you. The health care consultant noted in part:

--03/06/2023 Amy M RN CCM

> "An independent medical peer review was completed on 11/16/22 by Dr. Akhondi (Cardiovascular) who opined EE would have R/Ls to include Sitting: unrestricted. Standing: frequently up to 4 hours a day. Walking: frequently up to 3 hours a day. Lifting/carrying/pushing/pulling occasionally up to 30 lbs. Climbing stairs, balance, stoop, kneel, crouch, and crawl frequently. Reaching overhead and below waist frequently and reaching at desk level unrestricted both upper extremities. Use lower extremities for foot controls: unrestricted both lower extremities. Fine manipulation: unrestricted. Simple and firm grasping: unrestricted. An addendum dated 12/15/22 does not change the prior determination. Please see reports for full details.
>
> The medical records document ongoing care and treatment for chronic stable angina. The EE has been hospitalized in August 2021 and November 2021 as noted above. Recent testing (EKG, stress test, cardiac catheterization) showed mild findings and normal ejection fraction. During follow up appointment 1/26/22 with Dr. Fields (Cardiology), EE reports chronic angina only with emotional stress. Exam is normal and there is no change in treatment. There is a gap in treatment from 1/26/22-5/31/22 at which time EE established care with new cardiologist as he moved out of state. He continues to report chronic angina. Exam is normal. Repeat stress test 6/13/22 showed no ischemia and normal ejection fraction. The medical records do not support a functional impairment from 1/27/22 and forward as evidenced by normal exam findings and cardiac work-up that revealed no significant findings. The R/Ls outlined in detail above by peer reviewer Dr. Akhondi (Cardiovascular) are supported and would not limit EE from performing at his prior physical function. There is no new compelling evidence that would change the prior determination."

On 03/08/2022 copy of the medical report was sent to you allowing time to provide a copy of the reports to your clients treating physician for further review and respond with any additional information. As of the date of this letter we received the following documents:

02/16/2023 chart for office visit with Kenneth Shaw DC- chiro
02/21/2023 Xray from Premier radiology
02/22/2023 chart for follow up office visit with Shaw DC- schiro
03/29/2023 RTR response letter (disputing NDC findings)

This information was referred back to the reviewing healthcare consultant for an Addendum and the reviewer noted in part:

--04/19/2023 Amy M RN CCM

"The additional records document care and treatment for low back pain with left side sciatic, spinal instability, sacral and sacrococcygeal region, pain thoracic spine, and cervicalgia that has been present for one month with an unknown cause. The EE is treated by Dr. Shaw (Chiropractor) as noted above. Lumbar x-ray 2/21/23 showed degenerative changes and no acute abnormalities. Exam documents tightness, tenderness, and decreased range of motion throughout the spine. There is no documentation of motor or sensory deficits, and no gait abnormalities. Treatment consists of spinal manipulation, electrical stimulation, and trigger point therapy. While the EE reports achiness/soreness throughout the spine, the medical exam documentation fails to demonstrate severe pain, weakness, altered sensation, or impaired gait therefore the prior determination remains unchanged. There is no indication of further escalation of care or treatment such as further specialist care (orthopedics, neurosurgery) or further diagnostic imaging (MRI). There is no treating provider certifying disability due to these conditions and EE has retired from working."

A copy of the addended medical report was sent to you for review and response 04/25/2023.

In addition, on 05/23/2022 a copy of an updated Occupational Analysis was sent to you for review and response.

On 05/30/2022 you responded to our review/reports indicating you agreed with the updated Occupational Analysis however you stand behind your previous appeal response and indicated there is nothing more you will be submitting for review.

**<u>Second Level Appeal Decision</u>**

We understand that your client has been diagnosed with heart disease and hyperlipidemia. However, our review of the medical documentation, which included consultation with and/or review of a written report from a health care consultant and a vocational rehabilitation consultant as well as a review of any restrictions or limitations that were identified during our review process, determined the medical records do not support restrictions and limitations that would render your client unable to perform the main duties of your client's own occupation beyond your clients LTD benefit commencement date 01/27/2022.

We are governed by ERISA regulations which requires we provide a full and fair review of each claim. According, ERISA procedures, in deciding an appeal of any adverse benefit determination that is based in whole or in part on a medical judgement, the appropriate named fiduciary shall consult with a health care professional who has appropriate training and

experience in the field of medicine involved in the medical judgement. The requirement does not state the health care professional must be a physician. The health care consultant who reviewed the claim file is qualified to make a functional status determination and or provide work restrictions.

In your letter dated 03/29/2023 you noted that in addition to his cardiac deficits Mr. Duntz also suffers from objective, degenerative changes of the spine, which have manifested into a diagnosis of lumbago with sciatica, sacral and sacrococcygeal instabilities, pain in the thoracic spine and cervicalgia. Please note that there is no provider certifying that Mr. Duntz is disabled due to these conditions however at the appeals level the records regarding these conditions were reviewed by our healthcare consultant. It was determined that there were no acute abnormalities on imaging, the medical exam documentation fails to demonstrate severe pain, weakness, altered sensation, impaired gait, or escalation of care to a specialist. The records submitted for review for these conditions were also dated a year beyond the initial timeframe in question for disability.

We acknowledge Mr. Duntz treating specialists indicate that he is at risk from a cardiac standpoint if he were to attempt to return to work however it's important to understand that we do not insure a possible risk of a disability. We insure an individual when they are unable to perform the main duties of their occupation on a full or part-time basis. In your clients' case, he was Totally Disabled when he stopped working 07/31/2021 due to heart disease and hyperlipidemia at which time he was limited to daily activities secondary to undergoing hospital evaluation, procedures and or immediate recovery from 08/02/2021 to 08/09/2021. During our review at the appeals level our focus was medical support from the benefit commencement date of 01/27/2022 forward. The medical documentation relevant to this timeframe noted Mr. Duntz reported chronic angina with emotional stress however he had normal exam findings along with normal ejection fraction.

To address your concerns of Mr. Duntz being paid on the short term claim and then denied on long term, after reviewing the healthcare consultant review completed at the short term level it appears they noted it would be reasonable to allow the claimant to attend his follow-up on 01/26/2022 and to obtain and review those notes for ongoing benefits. However, it appears the short term examiner released benefits beyond that date. Regardless of what actions and or decisions were made on the short term claim STD and LTD are both separate polies and separate claims and are reviewed individually in order to appropriately evaluate the timeframes in question (timeframes covered under the policy) and that they are supported per the individual policy provisions.

Overall, taking into consideration Mr. Duntz advanced age, morbidity of cardiac conditions with contribution from his comorbidities (well controlled hyperlipidemia and hypertension), ongoing complaints of chest pain and fatigue the medical records in Mr. Duntz claim file support the following restrictions and limitations: Sitting: unrestricted. Standing: frequently up to 4 hours a day. Walking: frequently up to 3 hours a day. Lifting/carrying/pushing/pulling occasionally up to 30 lbs. Climbing stairs, balance, stoop, kneel, crouch, and crawl frequently. Reaching overhead and below waist frequently and reaching at desk level unrestricted both upper extremities. Use lower extremities for foot controls: unrestricted both lower extremities. Fine manipulation: unrestricted. Simple and firm grasping: unrestricted. These restrictions and limitations are consistent with his own occupation and we therefore find that your client is no longer Totally Disabled under the terms of our policy.

We evaluated this claim by applying the provisions of the policy to the facts and opinions contained in the claim file. Other than what is set out in the policy, we did not rely upon any guidelines, internal rules, protocols, standards or other similar criteria in reaching this claim determination.

You and your client have exhausted all rights of appeal, and your client's administrative file is now closed.

If your client's plan is subject to ERISA, your client may have other voluntary alternative dispute resolution options, such as mediation. One way to find out what may be available is to contact your client's local U.S. Department of Labor Office and your client's State insurance regulatory agency. In addition, your client has the right to pursue litigation and your client may request copies of records and other information relevant to the claim free of charge.

The employer's plan has a contractual limitations period of six years, which means that a lawsuit must be brought within six years after the date written proof of claim or proof of continued disability was required. The date on which the contractual limitations period expires for this claim is 04/27/2028.

Please contact me directly at the number below with any questions you may have or email us at LFGAppeals@lfg.com.

Sincerely,

Amber Cronican
800-423-2765 X 7304
Specialist, Appeals Claims
Appeals Department – Claims Solutions Shared Services
The Lincoln National Life Insurance Company

Enclosure: TRANSLATION SERVICES FORM

REF #19271525

Chinese (Simplified)

注意：如果您说普通话，可以选择免费语言支持服务。 请拨打 1-800-423-2765.

Chinese (Traditional)

注意：若您講國語，可使用我們的免費語言支援服務。 請致電 1-800-423-2765.

Tagalog

Pansinin: Kung nagsasalita ka ng Tagalog, mayroon kang magagamit na mga libreng serbisyo ng tulong sa wika. Tumawag sa 1-800-423-2765.

Spanish

Atención: si habla español, tenemos disponibles servicios de apoyo con el idioma sin costo para usted. Llame al 1-800-423-2765.

Navajo

DÍÍ BAA AKÓ NÍNÍZIN: Díí bee yáníłti'go Diné bizaad, saad bee áká'ánida'áwo'dę́ę́' t'áá jiik'eh, ná hóló̜. Koji̜' hódíílnih áo̜i̜óóo̜éą̜ą́o̜ąíę́ę.

Lincoln/Duntz 0186